## Commonwealth v. Board for the Assessment and Revision of Taxes

*Ralph H. Frank*, Special Deputy Attorney General, *John T. Duff, Jr., John M. Henry, Charles A. Fagan, Jr., Joseph A. Richardson* and *Earl F. Reed*, for petitioner.

*Mortimer B. Lesher*, County Solicitor, for respondent.

GRAY, J., September 1, 1931.—The Attorney General of the Commonwealth of Pennsylvania, in his petition herein, prays for a writ of peremptory mandamus, directing the Board for the Assessment and Revision of Taxes of Allegheny County to certify immediately to the county treasurer all assessments

of poll taxes made by the said board pursuant to the Act of May 13, 1931, P. L. 117, down to and including August 31, 1931, and thereafter to certify all such assessments under said act to the collector of delinquent taxes, and to certify all such assessments to the Controller of Allegheny County.

The procedure for the assessment of occupation taxes by the board for the assessment and revision of taxes and for the certification of said assessments to the county controller and county treasurer under the laws that existed prior to said Act of 1931 has been fully set out in our opinions In re Assessment of Voters, 77 Pitts. L. J. 561, and in Stauffer v. Allegheny County Tax Board, 78 Pitts. L. J. 567, to which opinions we hereby refer for a statement of the proper practice in matters covered by them up to the time the Act of 1931 took effect.

The Act of 1931 abolishes occupation taxes in counties of the second and third class, and in lieu thereof provides that such counties shall assess a poll tax of fifty cents on each resident or inhabitant in such counties over the age of twenty-one years, which poll tax, it is provided, shall be collected by the treasurer and delinquent tax collector with like powers, duty and authority as provided by law for the collection of taxes under the prior law.

Under this provision of the Act of 1931 the original procedure for the assessment of the poll tax and the delivery of duplicates of such assessments to the county controller, and by him to the county treasurer, and by the county treasurer to the collector of delinquent taxes, would be exactly the same as the procedure under the prior law in reference to the assessment of occupation taxes.

Under the law as it stood before 1931, when the board for the assessment and revision of taxes had delivered the tax duplicates to the county controller, which in the ordinary course was done before May 1st in each year, there was no express authority of law for any additional assessments of occupation taxes by the board for the assessment and revision of taxes or the delivery of duplicates of any further assessments to the county controller, county treasurer or collector of delinquent taxes, and the authority of the latter two officials to collect taxes was limited to the taxes as shown levied by the tax duplicates delivered prior to May 1st. The Act of 1931 gives to the board for the assessment and revision of taxes authority to make assessments of poll taxes down to a time at least two months before any general or municipal election, and it is under this authority that the board has been adding to its records poll tax assessments.

The petition of the attorney general challenges the legality of the action of the board for the assessment and revision of taxes in this particular.

It appears from the testimony in this case that the board for the assessment and revision of taxes has required each applicant for assessment to make an affidavit as to his or her right to be assessed. When the affidavit has been made, the board has entered the name of the applicant for assessment on its assessment books, giving his address, and stating opposite his name the amount of the poll tax provided by the act of assembly, which is fifty cents. It has then permitted the applicant for assessment to take the affidavit away with him, and has stationed clerks of the board in the office of the county treasurer. If the applicant for assessment appeared in the county treasurer's office with the affidavit which he had made before the board, the clerk of the board then wrote the applicant's name in the tax duplicates which the county commissioners had delivered to the county controller, and the county controller had delivered to the county treasurer prior to May 1, 1931, under the law existing at that time, and the county treasurer then issued a tax receipt to the person thus entered on his books on receipt of the fifty cents poll tax from such person, or someone claiming to represent him on a written order.

The board for the assessment and revision of taxes does not know how many names have been added to the books in its office, or how many names have been added to the books in the office of the county treasurer under this procedure, and it appears there are thousands of names on the books of the board for the assessment and revision of taxes which do not appear on the books of the county treasurer, and the board has no knowledge as to how many of the persons who made affidavits before it and have taken the affidavits away have appeared in the office of the county treasurer to have their names placed on the tax duplicates there.

The board maintains that it has made no assessments of poll taxes at all on the records of its own office, and that the assessment of poll taxes under this Act of 1931 has only been made when the applicant for assessment has appeared in the office of the county treasurer and his name has been added to the tax duplicates there.

In no case has the board for the assessment and revision of taxes given any kind of an official certificate of the fact of an assessment to the county treasurer or the county controller, and no formal action of the board for the assessment and revision of taxes making assessments of poll taxes or certifying the same to the county controller or county treasurer has been shown. The county treasurer has no record in his office showing an official assessment by the board for the assessment and revision of taxes for which the board can be held responsible.

Manifestly, this practice is not in compliance with the requirements of the Act of 1931. Under the Act of 1931 and the earlier acts, which must all be taken together, there must be an officially recognized action of the board for the assessment and revision of taxes making an assessment of a poll tax under the Act of 1931 in the office of the board for the assessment and revision of taxes. The assessment must be completely made in the office of the board and a record thereof must be made and remain in the office of the board. It is this complete and official record of an assessment which, under the Act of 1931, the board must certify to the county treasurer or the county collector of delinquent taxes. No doubt the act should have required a certification to the county controller, but as the first duty of the board under the old act was to deliver a tax duplicate of the assessments to the controller, from whom it passed to the county treasurer, the duty to furnish the county controller with a certificate of assessment under the Act of 1931 may be inferred. But, at all events, no assessment can be made in the county treasurer's office on the duplicates furnished to him prior to May 1st , or on the certificate furnished subsequently thereto under the Act of 1931. The duplicates under which the county treasurer acts in the collection of taxes and the certificates of assessment of poll taxes under the Act of 1931 are simply evidence to him of the fact of the assessment, on the basis of which he is authorized to collect the taxes assessed and to issue receipts therefor. The original and official record of the assessment must remain in the office of the board for the assessment and revision of taxes.

While the act does not provide for a first certification of assessments to the county controller, as the Act of 1861 provides, we are satisfied that on an official certification of assessments from the board to either the county treasurer or the county collector of delinquent taxes, as provided in the act, these officials would have legal authority to issue tax receipts under such certification, and we are just as firmly of the opinion that without such official certification they have no such authority at all.

It is contended that it is practically impossible to comply with the act and make an immediate certification of the assessments. It may be that immediate certification cannot be made in each case, but we see no difficulty in establishing

a practice for certification under the act which would comply with the act and give to the county controller, the county treasurer and the county collector of delinquent taxes a public and official record which would reveal to all these interested parties and the public the exact facts in regard to the assessments of poll taxes on which all interested officials could safely act and which would provide every reasonable convenience for the public. A program of certification established after consultation of the board for the assessment and revision of taxes, the county controller, the county treasurer and the collector of delinquent taxes would certainly seem to be possible of formation in strict compliance with the act of assembly.

A peremptory mandamus as prayed for must, therefore, be awarded.

From William J. Aiken, Pittsburgh, Pa.